IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

A. H., a Minor, by and through
his next friends and natural parents
Steven Hohe and Velvet Hohe, et al.,   Civil Action

      Plaintiffs,   Case No. 09-2517-DJW

v.

KNOWLEDGE LEARNING CORP.,
d/b/a Children's World Learning Center,
also d/b/a Kindercare Learning Center,

      Defendant.

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Leave to File Defendant's Motion to Reconsider and Memorandum of Law Concerning Expert Testing of Dr. Warren Sibilla (ECF No. 208) ("Motion for Leave to File Motion to Reconsider Out of Time"). Defendant desires to seek reconsideration of the Court's September 7, 2010 Memorandum and Order denying Defendant's Motion to Compel (ECF No. 33) and denying in part and granting in part Defendant's Motion to Compel (ECF No. 56). The first of these Motions to Compel sought an order requiring the minor child's father, Steven Hohe, to submit to a mental examination pursuant to Federal Rule of Civil Procedure 35. The second of the Motions to Compel sought an order requiring the minor child to submit to a Rule 35 medical examination and the minor's parents and maternal grandparents to submit to testing and/or interviews.

Defendant recognizes that it must seek leave to file the motion to reconsider, because, as is discussed below, a motion to reconsider a non-dispositive order must be filed within fourteen days of the date the order is filed. Here, Defendant waited almost five months before seeking leave to file its motion to reconsider.

For the reasons set forth below, the Court will deny Defendant's motion.

**I.     Background Information**

    **A.     Nature of the Case**

This is a negligence action brought by a minor child, A. H., by and through his father and mother and "next friends" Steven and Velvet Hohe.[1] The action is also brought by Steven Hohe and Velvet Hohe, individually. Plaintiffs' First Amended Complaint alleges that A. H. was subjected to abuse by an employee of Defendant while at a childcare facility owned and operated by Defendant. A. H., by and through his parents, and Steven and Velvet Hohe, individually, sue Defendant for negligent hiring and supervision (Count I) and for negligence per se based on claimed violations of K.S.A. 65-516 (Count II). The First Amended Complaint alleges that as a result of Defendant's alleged negligence, A. H. suffered injuries, including physical and psychiatric injuries, and "will continue to suffer physical and psychiatric harm into the future."[2]

In addition, Steven Hohe and Velvet Hohe each individually sue Defendant to recover the medical expenses and loss of services they claim they each suffered as a result of the alleged injuries to A. H. (Count III).[3] They claim they "have sustained and will in the future sustain expenses for medical care for minor Plaintiff A. H." and that they "have been deprived of the services of their son" because of the injuries he has allegedly suffered.[4]

    **B.     The Motions to Compel and the Court's Memorandum and Order of Which Defendant Seeks Reconsideration**

---

[1] Pursuant to Federal Rule of Civil Procedure 17(c)(2), a minor who does not have a duly appointed representative "may sue by a next friend or by a guardian ad litem." In this case, A. H. sues by his "next friends," his parents, Steven and Velvet Hohe.

[2] First Am. Compl. (ECF No. 142) ¶¶ 50-51.

[3] *Id.*, Count III, ¶¶ 57-59.

[4] *Id.* ¶ 59.

The Memorandum and Order of which Defendant seeks reconsideration was filed on September 7, 2010 (ECF No. 177). It ruled on two motions to compel filed by Defendant relating to Rule 35 examinations of Plaintiffs. In the first Motion to Compel (ECF No. 33), Defendant sought to compel the mental examination of Steven Hohe. In the second Motion to Compel (ECF No. 56), Defendant sought to compel the medical examination of A. H. In that second motion, Defendant also moved for an order requiring Steven and Velvet Hohe, along with A. H.'s maternal grandparents, to submit themselves to interviews and testing conducted by a licensed psychologist.

Defendant stated in its motions that it had retained Dr. Warren Sibilla, a licensed psychologist to perform the testing and interviews. Defendant requested that the testing and interviews take place over two days. In the alternative, and at a minimum, Defendant stated that it could conduct the testing and interviews in one day in ten hours. Defendant submitted the affidavit of Dr. Sibilla, in which he requested "the following stipulations to perform an independent medical examination of [A. H.]." Those stipulations, as set forth in his affidavit, were as follows :

1. An interview of the child, A. H., to take *between 30 and 45 minutes*.

2. [A]n interview and paper and pencil testing of [A. H.'s] mother, father, maternal grandmother . . . .

3. At a minimum . . . a separate interview and paper and pencil testing of both the mother and the father (whereas the testing of the father is absolutely necessary).

4. The testing and interview of the father would take approximately *four hours* to complete. . . . (*1 hour* for interview, *3 hours* for paper and pencil testing).

5. For the mother, I would require the same testing as laid out for the father plus an additional test . . . for a total testing time of *5 hours* (*1 hour* for interview, *1 hour* for Vineland and *3 hours* for paper and pencil testing).

6. The test required by each, the grandmother and grandfather, would be the PDS, BASC-2, . . . . An assessment of each grandparent would be about *2.5 hours (1 hour* for interview and *1.5 hours* for paper/pencil testing for each grandparent).

3

> 7. A preferable assessment situation would allow me to complete testing *over two days*, but *at a bare minimum*, I would require approximately *10 hours of testing in one day* by interviewing and testing both parents and interviewing the child.[5]

In other words, Dr. Sibilla sought to do a 30-45 minute interview of the minor child A. H.; a 4-hour interview and test of the father, Steven Hohe; a 5-hour interview and test of the mother, Velvet Hohe; and a 2.5-hour interview and test of each maternal grandparent.

The Court denied the first Motion to Compel, ruling, *inter alia*, that Defendant had not made an affirmative showing that Steven Hohe's mental condition is in controversy in this case.[6] The Court granted the second Motion to Compel to the extent it sought a Rule 35 mental examination of A. H., and ruled that Defendant was entitled to interview A. H. for approximately 30-45 minutes, as Defendant requested.[7] The Court denied the second motion to the extent it sought to compel any testing or interviews of A. H.'s parents or grandparents, ruling that (1) the grandparents were not parties and therefore could not be compelled to undergo any Rule 35 examinations or interviews to supplement the Rule 35 exam of A. H.; and (2) Defendant had made no affirmative showing that the physical or mental condition of either parent is in controversy in this case.[8]

## II. Defendant's Grounds for Seeking Reconsideration and Seeking Leave to File Its Motion to Reconsider Out of Time

Defendant seeks leave to file its Motion to Reconsider, in which it asks the Court to grant its two Motions to Compel. In other words, Defendant asks the Court to reconsider its September

---

[5] Dr. Sibilla Aff., attached as Ex. G to Def.'s Second Mot. to Compel (ECF No. 56) (emphasis added).

[6] September 7, 2010 Mem. and Order (ECF No. 117) at 14.

[7] *Id*. at 20, 22.

[8] *Id*. at 19-20.

4

7, 2010 Memorandum and Order and permit Dr. Sibilla to conduct a Rule 35 mental examination of Steven Hohe. Defendant also asks the Court to permit Dr. Sibilla to conduct interviews and testing of Steven and Velvet Hohe and the maternal grandparents for the periods of time set forth in Dr. Sibilla's affidavit. Finally, Defendant also appears to be asking the Court to allow Dr. Sibilla *additional* time to interview A. H., even though the Court granted the Second Motion to Compel as to A. H. and gave Dr. Sibilla 30-45 minutes to interview A. H., which was exactly the amount of time Defendant requested for A. H.'s interview.

Defendant contends that reconsideration is necessary to prevent manifest injustice. Defendant bases its manifest injustice argument on two grounds. First, Defendant contends that the Court's September 7, 2010 ruling is manifestly unjust because the limitations placed on Dr. Sibilla made it impossible for Dr. Sibilla to diagnose A. H. According to Dr. Sibilla's deposition testimony, the limitations that the Court's September 7, 2010 ruling placed on his examination rendered him unable, professionally and ethically, to assign a diagnosis to A. H. Dr. Sibilla also testified that eight of the eighteen criteria for diagnosing post traumatic syndrome rely on "internal states"; however, a child as young as A. H. is unable to reflect on his internal states and share that information with a stranger such as an examining psychologist. Therefore, according to Dr. Sibilla, the examining psychologist must rely on interviews and information received from the child's caregivers, in this case, A. H.'s parents and maternal grandparents. Defendant contends that because Dr. Sibilla was prohibited from obtaining any information from A.H's caregivers, he was unable to apply the criteria for diagnosing post traumatic syndrome to A. H.

As to Defendant's second manifest injustice argument, Defendant asserts that Plaintiff's experts have been give free rein to conduct unlimited examinations and interviews of A. H. and his

5

parents, and that they have conducted additional testing and interviews since Dr. Sibilla's interview was conducted. Defendant argues that it is manifestly unjust to allow Plaintiffs' experts to testify to opinions based on testing and interviews that have been denied Defendant's expert.

Defendant asserts that it could not have filed its motion to reconsider within the required fourteen-day time frame because it was not until February 2011 that it learned of Dr. Sibilla's inability to diagnose A. H. and of Plaintiffs' additional testing and interviews of A. H. and his parents. Defendant states that it did not learn of Dr. Sibilla's inability to diagnose A. H. until Dr. Sibilla gave his deposition on December 17, 2010. Also, Defendant maintains that it did not learn that Plaintiffs' experts had conducted additional testing and interviews of Plaintiffs until Plaintiffs served their supplemental expert reports on February 2 and 3, 2011, and Plaintiffs' expert Dr. David Corwin gave his supplemental deposition on February 4, 2011.

## III. Applicable Law Regarding Motions to Reconsider

Although the Federal Rules of Civil Procedure do not provide for motions for reconsideration,[9] the District of Kansas has promulgated a local rule, D. Kan. Rule 7.3(b), which addresses reconsideration of non-dispositive rulings. Pursuant to that rule, a party seeking reconsideration of a non-dispositive order "must file a motion with 14 days after the order is filed unless the court extends the time."[10] Furthermore, D. Kan. Rule 7.3(b) requires that the motion to reconsider "be based on (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice."[11]

---

[9]*Hatfield v. Bd. of County Comm'rs*, 52 F.3d 858, 861 (10th Cir. 1995).

[10]D. Kan. Rule 7.3(b).

[11]*Id.*

The Tenth Circuit has observed that "a motion for reconsideration is an extreme remedy to be granted in rare circumstances."[12] The decision whether to grant or deny a motion for reconsideration is committed to the Court's sound discretion.[13] A motion to reconsider "gives the court the opportunity to correct manifest errors of law or fact and to review newly discovered evidence."[14] A motion to reconsider is appropriate "if the court has obviously misapprehended a party's position, the facts, or applicable law."[15] It is also appropriate where the moving party produces new evidence that could not have otherwise been obtained through the exercise of due diligence.[16] "A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider."[17]

## IV. Discussion

The Court finds that Defendant has failed to show why it waited almost five months after the Court's ruling to seek reconsideration. Defendant attempts to excuse its lengthy delay by arguing that Dr. Sibilla did not reveal his inability to diagnose A. H. until he gave his deposition on December 17, 2010. While it is true that Dr. Sibilla was not deposed until December 2010, the Court finds it difficult to believe that this was the first time Defendant's counsel became aware of

---

[12]*Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995)

[13]*Id.*; *Azzun v. Kan. Dep't of Health and Env't*, No. 10-2009-JWL-JPO, 2010 WL 148801, at *1 (D. Kan. Jan. 14, 2010).

[14]*Azzun*, 2010 WL 148801, at *1 (citing *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992)).

[15]*Id.* (citing *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981); *Voelkel v. Gen. Motors Corp.*, 846 F.Supp. 1482, 1483 (D. Kan. 1994)).

[16]*Id.* (citing *Major,* 647 F.2d at 112; *Voelkel,* 846 F.Supp. at 1483).

[17]*Sithon Maritime Co. v. Holiday Mansion*, 177 F.R.D. 504, 505 (D. Kan. 1998) (citations omitted).

its' own expert's inability to diagnose A. H. Dr. Sibilla's expert report is dated October 12, 2010,[18] and clearly would have revealed his lack of diagnosis. More importantly, Defendant should have informed Dr. Sibilla of the time limitations that the Court imposed on the exam shortly after the Court entered its September 7, 2010 Memorandum and Order. Dr. Sibilla most likely would have informed Defendant at that time that the limitations were impractical. At the very least, Dr. Sibilla would have informed Defendant after he conducted his exam of A. H. in either September or October 2010.[19] Thus, the Court finds that Defendant cannot rely on Dr. Sibilla's December 2010 deposition to excuse its delay.

While the Court has no reason to doubt Defendant's assertion that it did not learn until February 2011 that Plaintiffs' experts had conducted additional testing and interviews of A. H. and his parents, the Court finds this additional testing to be irrelevant to reconsideration. In its proposed Motion to Reconsider,[20] Defendant fails to present any caselaw or specific argument that demonstrates that the Court's September 7, 2010 Memorandum and Order was erroneous. In fact, Defendant provides no rationale for reconsideration save its disagreement with the Court's conclusion and its perception that it is fundamentally unfair for Plaintiffs' experts to have more access to Plaintiffs than Defendant. Defendant must show that the Court's Order contains a manifest error of law or fact, that reconsideration is necessary to review newly discovered evidence,[21] or that

---

[18]*See* Dr. Sibilla Dep. Test., 95: 5-7, attached as Ex. A to Mot. for Leave to File Mot. to Recons. Out of Time (ECF No. 208).

[19]The record does not reveal when Dr. Sibilla conducted his interview of A. H.

[20]*See* Def.'s Proposed Mot. to Reconsider, attached as Ex. C to Def.'s Mot. for Leave to File Mot. to Recons. Out of Time (ECF No. 208).

[21]*See Azzun*, 2010 WL 148801, at *1 (citing *Comm. for First Amendment,* 962 F. 2d at 1523).

8

the Court misconstrued Defendant's position, the facts, or applicable law.[22]  Instead, Defendant only asserts *its opinion* that it is fundamentally unfair for Plaintiffs' experts to have more access to Plaintiffs for testing and interviews.  This simply is not grounds for reconsideration.

In light of the foregoing, the Court denies Defendant's Motion for Leave to File Motion to Reconsider Out of Time.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Leave to File Defendant's Motion to Reconsider and Memorandum of Law Concerning Expert Testing of Dr. Warren Sibilla (ECF No. 208) is denied.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 18th day of April, 2011.

s/David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:    All counsel and pro se parties

---

[22]*See id*. (citing *Major,* 647 F.2d at 112; *Voelkel,* 846 F.Supp. at 1483).